RECEIVED
MAR 02 2017
JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC

UNITED STATES DISTRICT COURT OF NORTH CAROLINA (Eastern Division)

ROSITA SABROSSO-RENNICK
2507 Triangle Lake Road
High Point, NC 27260

Plaintiff
vs

Case#: 5:17-cv-114-BO

NORTH CAROLINA STATE TREASURER
c/o North Carolina Local Government Commission
Longleaf Building
3200 Atlantic Avenue
Raleigh, NC 27604

Defendant

## Civil Complaint

### Claim I- Retaliation in Violation of The Title Seven

1. I, Rosita Rennick, Plaintiff, am a resident of Raleigh, North Carolina. At all times relevant to this complaint, I was an employee of the Defendant.
2. On December 2, 2016, I received a right to sue from the Equal Employment Opportunity Commission (EEOC) and my complaint is being filed within the ninety (90) day period provided.
3. The Plaintiff, an African American female, aged 49, is a twenty-five (25) year veteran of the Marketing and Public Relations profession, was employed by North Carolina Department of State Treasurer ("NCDST" or the "Respondent") within the division of the North Carolina Retirement Systems Supplemental Retirement Plans ("SRP"), as an Information and Communications Specialist II (with the working title of Marketing Officer) and reported directly to SRP's Deputy Director, Mary Buonfiglio ("Mrs. Buonfiglio"), until the state's unlawful dismissal for alleged unsatisfactory work performance.
4. Plaintiff's first protected activity took place in July of 2015 to the agency's internal HR department, immediately following one of many uncomfortable and antagonistic conversations with her Manager, Mrs. Buonfiglio. It was during that last conversation with Mrs. Buonfiglio in July of 2015 that the Plaintiff said to Mrs. Buonfiglio, that she was not comfortable with the conversation and that she was going to excuse herself and go directly to Human Resources ("HR") as she perceived she was being discriminated against based on race, based on the condensing way in which she was spoken too and her observation that her similarly situated counter-parts were not treated in the same manner.
5. Immediately following the departure of the Communication Officer (the "CO"), in February of 2015, the Plaintiff was given the COs duties, surreptitiously, along-side of having to perform her own duties as Marketing Officer. After many conversations, the Plaintiff had with Ms. Buonfiglio about her being uncomfortable with having to perform

the job of the CO, not understanding or being told what the expectations were or what that particular job description was, the relationship began to deteriorate quickly. In April of 2015, the Plaintiff was given an assignment to write up an entry for a national contest that the North Carolina State Treasurer could enter and possibly win. This task would have originally been an assignment for the CO but because the positon was vacant, it fell in the lap of the Plaintiff.

6. After many difficult "One on One" meetings between the Plaintiff and Mrs. Buonfiglio, one meeting in particular in July of 2015, the Plaintiff became tired of the hostility towards her and excused herself from the meeting. She immediately went to the agency's HR office to speak with one of the HR generalist, Mrs. Josephine Stith ("Ms. Stith"), about her perception of being discriminated against. Days after that meeting with Ms. Stith of HR, Mrs. Stith arranged a meeting with the Plaintiff, Ms. Buonfiglio, and HR to further discuss the issues. However, after the arrangement was made for that meeting and after accepting the meeting invite, the Plaintiff had to decline attending the meeting, as she was under a doctor's care for an upcoming medical leave. She was told at her pre-op appointment days before the meeting was to take place that she could not be under any undue stress before her surgery, as her blood pressure was not stable and could jeopardize her surgery date.
7. The Plaintiff will show by the supported documentation attached to her rebuttal to the Respondents PS and discussed herein, that the Supplemental Retirement Plans, a division of the North Carolina State Treasurer's office, unlawfully dismissed her from her position as a Marketing Officer on February 4, 2016 (the "Termination Date"), as a form of retaliation under the pretext of "unsatisfactory work performance" after having discussed her concerns about possible race discrimination with the agency's HR department.
8. Furthermore, it will be shown that retaliation towards the Plaintiff began within weeks of "exercising her right to participate in a protected activity" to the agency's HR department. There were many email and verbal communications to the agency's HR office in care of its representative Mrs. Stith, about not wanting to be retaliated against for exercising her rights. After such communication to HR, the Plaintiff was emailed information on retaliation which detailed the state's policy on discrimination and retaliation from Mrs. Stith. With that communication from HR, she felt confident at the time that there would be no adverse action taken against her, but she was mistaken.
9. She quickly realized that more work assignments were given to her. Work that originally had been performed and produced by the vendors DST hired and the Plaintiff would oversee. Also, added pressure was put on her to perform the duties of the vacant CO position, along with her own duties as the marketing officer. Even though the Plaintiff was told that the agency will make attempts to fill the vacancy, DST's Retirement Systems hired a Content & Communication Manager Marni Schribman ("Mrs. Schribman"), in April of 2015.
10. It was the Plaintiff's understanding that the Content & Communication Manager was hired to manage the small communication team of the Retirement Systems, including the Plaintiff from the SRP team which would then make Mrs. Buonfiglio, a second line manager to the Plaintiff. For clarity, the names and duties of the SRP team members are as follows:

- The Plaintiff, Marketing Officer (African American)
- Communication Officer, VACANT until August 2015. Filled by Catherine Jarboe (Caucasian)
- Mya Moseley, Compliance Officer (Caucasian)
- Reika Krishnan, Project Manager (Indian)
- Mary Laurie CeCe, SRP Attorney (Caucasian)
- Mary Buonfiglio, SRP Deputy Director (Caucasian)
- Lisa Page, Administrative Assistant (Caucasian)
- Steve Toole, Director of the Retirement Systems (Caucasian)

11. Although Mrs. Schribman, was slated to be the Plaintiff's Manager on paper, she still answered directly to Mrs. Buonfiglio, although Miss Schribman actively managed the retirement plans section communication team members. Below is a list of those team members:
Steven Mann (Caucasian)
Michelle McDonald – (African American)
Margaret Christina Frazier (Caucasian)

12. After Miss Schribman became acclimated into her position, the Plaintiff confided in her about the problems she was having with Mrs. Buonfiglio and Miss Schribman told her she would meet with Mrs. Buonfiglio to discuss her concerns. In sharing her concerns with Miss Schribman, the Plaintiff reasonably believed that her concerns would be addressed and the working conditions would change. The Plaintiff could not foresee what chain of events would take place after Miss Schribman met with Mrs. Buonfiglio. After meeting with Mrs. Buonfiglio, Miss Schribman began to act differently towards the Plaintiff. Miss Schribman would stop exchanging pleasantries with the Plaintiff, she would listen in on phone calls that the Plaintiff was having with vendors and report any and everything back to Mrs. Buonfiglio, when previously, she complimented her on the vast amount of work the Plaintiff had accomplished. Miss Schribman mentioned to the Plaintiff that she has never managed a team before getting this particular positon and wanted to make Mr. Steve Toole ("Mr. Toole" or "Director", respectively), the Director of the Retirement Systems happy. Both Mrs. Buonfiglio and Miss Schribman answered to Mr. Toole, so upon information and belief, it is the Plaintiff position that after Mrs. Schribman spoke with Mrs. Buonfiglio, it would be in her best interest to play along with how Mrs. Buonfiglio was treating the Plaintiff.

13. From July 2015 through December 2016, Plaintiff engaged in protected activity, by filing an EEOC Complaint.

14. After that time, the Defendant and its agents unfairly targeted Plaintiff for termination.

15. During the last several months of her employment with DST, and following the multiple grievances to HR about Mrs. Buonfiglio and the unfair treatment she was receiving, she was given numerous duplicitous warnings from the department. One of which defamed her character and outright accused her of falsifying a state job application. The warning notice informed her that it was brought to the agency's attention that she lied on the job application for the marketing officer about her educational accomplishments. None of

which was the truth. The Plaintiff attempted to clear her name by offering to bring in her two college degrees, one from the community college of Baltimore, in which she graduated from, and the other from the four year university in which she graduated, but was told by the HR representative, Kristin Bierline ("Ms. Bierline"), that it would be of no use because they hired a third party to research my education and the results came back that I did not graduate from the community college listed on my application, as that was the only college questioned.

16. Additional warnings from DST to the Plaintiff consisted of other farcical performance issues to include costing the agency money for a missed deadline on a newsletter printing. For clarity on the newsletter, the Plaintiff's only role was to put the document into the agency's document tracking system, SharePoint, for legal signoff. The Plaintiff did not write the newsletter, nor did she fail to inform the attorney -Mary Laurie Cece ("Mrs. CeCe"), or the CO -Cathy Jarboe ("Ms. about its deadline to be approved, but was the sole person written up for the failure of not having it approved by the print deadline. Why was the Plaintiff singled out and was the only person being written up by her second line supervisor Mrs. Buonfiglio for the incident. When the Plaintiff questioned Mrs. Buonfiglio as to the reason she was being written up for this, she was told by Mrs. Buonfiglio that it was her fault that the newsletter did not get printed on time, and as a senior level employee, the Plaintiff should have known better. However; Mrs. Cece was a more senior person of the SRP staff than the Plaintiff, as she has been with the agency longer than the Plaintiff, was very familiar with the agencies practices and certainly was in a better position, than the Plaintiff to make the decision. It is important to note that Ms. CeCe was not reprimanded, nor disciplined.

17. The true reasoning for the write up and warning notice was unreasonable and preposterous, as well as a clear indication that the Plaintiff was targeted and singled out for engaging in a protected activity. The attorney Mrs. Cece was technically more senior than the Plaintiff because she was hired months before the Plaintiff. Also, the Plaintiff made many different efforts to get the newsletter signed off by legal including emailing her, and having her email pinged by the document management system which sends a message that she has an outstanding document waiting for her sign off in the system with an implicit deadline.

18. On January 8, 2016, the Defendant ordered, through The National Student Clearinghouse ("NSC"), a background check on the Plaintiff. On January 26, 2016, the Defendant issued a written disciplinary notice to the Plaintiff, entitled; "This is a written warning for falsifying a job application under N.C.G.S. § 126-30". Specifically, the notice provided that; "**In preparation for the administrative hearing arising out of your claims against your supervisor for discrimination, retaliation, and harassment the Human Resources office at the Department of State Treasurer made an effort to verify certain information on the job application submitted by you for the position of Marketing Officer for the Supplemental Retirement Plans**". The notice goes on to state that; "During this research it came to light that the information on the job application in which you state that you received an associate's degree in marketing from the Community College of Baltimore appears to be false". In the notice, the Human Resources Officer, Mrs. Bierline, quotes from N.C.G.S. §126-30, in relevant part that

states: b. "the employing authority within each department, university, board, or commission, shall verify the status of credentials and the accuracy of statements contained in the application for each [n]ew employee within "[9]0 days" from the date of the employees employment".

19. It is uncontroverted that the Plaintiff employment began more than 90 days prior to receiving this written warning. Mrs. Bierline admitted in her correspondence, that the sole purpose of this "so called investigation", was because, the Plaintiff had filed "claims" against her supervisor. This background check was for an improper purpose, and served no other purpose, but to exasperate the Plaintiff's emotional distress and retaliate against the Plaintiff for engaging in protected activity, for which she was subsequently terminated. This is a direct example of the retaliation experienced by the Plaintiff at the hand of the Respondent and its employees. In is important to note that the Plaintiff does in fact have an Associate's Degree from the Community College of Baltimore and a Bachelor's Degree (which they did not question) from Notre Dame College.
20. The Respondent subsequently disciplined the Plaintiff for allegedly providing false information, which is tantamount to an adverse employment action, which lead to her termination. The retaliation, in this instance, is by clear and convincing evidence.

21. Plaintiff incorporates her chart showing the retaliation below:

| DATE | DECISION MAKER | DISCIPLINE | COMMENT |
|---|---|---|---|
| 06-12-2014 | Hired | NA | New Employee (12 Month Probationary period/could have been let go for any reason). |
| 3-03-2015 | Mary Buonfiglio | None | Performance Review (Meets Expectations) |
| 07-21-2015 | Rosita Sabrosso-Rennick | None | Filed allegation of discrimination. |
| 09-22-2015 | Mary Buonfiglio | Negative Performance Review | Placed on Performance Improvement Plan ("PIP") |
| November 20, 2015 | Mary Buonfiglio | Written Warning, unsatisfactory job performance. (Missing alleged deadlines) | Warning Placed in File. |
| December 17, 2015 | Mary Buonfiglio | Allegation that Plaintiff missed a "Major Deadline". | |
| January 8, 2016 | Sam Balohac, HR | NA | Conducted an application background check. |
| January 29, 2016 | Kristen Bierline | Written Warning. Falsification of Job Application | |

| | | regarding education. Warning used to terminate the Plaintiff. | |
| January 29, 2016 | Mary Buonfiglio | Written Warning regarding unsatisfactory job performance. Warning used to support termination. | |
| February 8, 2016 | Mary Buonfiglio | Pre-Disciplinary Conference. | |
| February 10, 2016 | Steve Toole | The Plaintiff was terminated. | |

22. On February 10, 2016, the Plaintiff was unlawfully terminated.
23. The Defendant's actions were unlawful.
24. Plaintiff engaged in protected activity, thus, the Defendant was prohibited from retaliating against her.
25. Plaintiff has suffered damages.
26. Plaintiff prays for judgment in the amount of $85,000.00
27. Plaintiff prays that she be reinstated to her position.
28. Plaintiff prays for back pay.
29. Plaintiff prays for front pay.
30. Plaintiff prays that her personnel record be sanitized.
31. Plaintiff prays that the court will prohibit the Defendant from engaging in any future prohibited personnel practices.
32. And any other relief that is within the power of the court to grant.

## Claim 2- Retaliation in Violation of N.C.G.S. § 1A-1,

33. Plaintiff alleges all claims in the proceeding paragraphs.
34. Defendant's violation of the anti-retaliation provisions in Title 7, is also a violation of the Retaliation Employment Discrimination Act.
35. Plaintiff has suffered damages.
36. Plaintiff prays for judgment in the amount of $85,000.00
37. Plaintiff prays that she be reinstated to her position.
38. Plaintiff prays for back pay.
39. Plaintiff prays for front pay.
40. Plaintiff prays that her personnel record be sanitized.
41. Plaintiff prays that the court will prohibit the Defendant from engaging in any future prohibited personnel practices.
42. And any other relief that is within the power of the court to grant.

Respectfully Submitted,

_____
Rosita Sabrosso-Rennick

2507 Triangle Lake Road
High Point, NC 27260
443-240-3260
rositarennick@yahoo.com
Plaintiff

Jury Trial

I am requesting a jury trial on my complaint.

_____
Rosita Sabrosso-Rennick