## UNITED STATES DISTRICT COURT OF NORTH CAROLINA (Eastern Division)

**ROSITA SABROSSO-RENNICK**
3802 Delverne Road
Baltimore, Maryland 21218

**Plaintiff**
vs

Case#:**5:17-CV-00114-BO**

**NORTH CAROLINA STATE TREASURER**
c/o Sam Hayes, General Counsel
Shannon Conley or Angela Cooper
3200 Atlantic Avenue
Raleigh, NC 27604

**Defendant**
**********************************************************************************

## CIVIL AMENDED COMPLAINT
## AND
## JURY TRIAL PRAYER

### CLAIM 1- RETALIATION IN VIOLATION OF TITLE SEVEN

1. I would like to incorporate my previous complaint as if herein restated.

2. I, Rosita Sabrosso-Rennick, Plaintiff, am a resident of Baltimore, Maryland. At all times relevant to this complaint, I was an employee of the Defendant.

3. On December 2, 2016, I received a right to sue from the Equal Employment Opportunity Commission (EEOC) and my complaint is being filed within the ninety (90) day period provided.

4. The Plaintiff, an African American female, aged 49, is a twenty-five (25) year veteran of the Marketing and Public Relations profession, was employed by North Carolina Department of State Treasurer ("NCDST" or the "Respondent") within the division of the North Carolina Retirement Systems Supplemental Retirement Plans ("SRP"), as an Information and Communications Specialist II (with the working title of Marketing

1

Officer) and reported directly to SRP's Deputy Director, Mary Buonfiglio ("Mrs. Buonfiglio"), until the state's unlawful dismissal for alleged unsatisfactory work performance.

5. Plaintiff's first protected activity took place in July of 2015 to the agency's internal HR department, immediately following one of many uncomfortable and antagonistic conversations with her Manager, Mrs. Buonfiglio. It was during that last conversation with Mrs. Buonfiglio in July of 2015 that the Plaintiff said to Mrs. Buonfiglio, that she was not comfortable with the conversation and that she was going to excuse herself and go directly to Human Resources ("HR") as she perceived she was being discriminated against based on race, based on the condensing way in which she was spoken too and her observation that her similarly situated counter-parts were not treated in the same manner.

6. Immediately following the departure of the Communication Officer (the "CO"), inFebruary of 2015, the Plaintiff was given the COs duties, surreptitiously, along-side of having to perform her own duties as Marketing Officer. After many conversations, the Plaintiff had with Ms. Buonfiglio about her being uncomfortable with having to perform the job of the CO, not understanding or being told what the expectations were or what that particular job description was, the relationship began to deteriorate quickly. In April of 2015, the Plaintiff was given an assignment to write up an entry for a national contest that the North Carolina State Treasurer could enter and possibly win. This task would have originally been an assignment for the CO but because the positon was vacant, it fell in the lap of the Plaintiff.

7. After many difficult "One on One" meetings between the Plaintiff and Mrs. Buonfiglio, one meeting in particular in July of 2015, the Plaintiff became tired of the hostility

2

towards her and excused herself from the meeting. She immediately went to the agency's HR office to speak with one of the HR generalist, Mrs. Josephine Stith ("Ms. Stith"), about her perception of being discriminated against. Days after that meeting with Ms. Stith of HR, Mrs. Stith arranged a meeting with the Plaintiff , Ms. Buonfiglio, and HR to further discuss the issues. However, after the arrangement was made for that meeting and after accepting the meeting invite, the Plaintiff had to decline attending the meeting, as she was under a doctor's care for an upcoming medical leave. She was told at her pre-op appointment days before the meeting was to take place that she could not be under any undue stress before her surgery, as her blood pressure was not stable and could jeopardize her surgery date.

8.  The Plaintiff will show by the supported documentation attached to her rebuttal to the Respondents PS and discussed herein, that the Supplemental Retirement Plans, a division of the North Carolina State Treasurer's office, unlawfully dismissed her from her position as a Marketing Officer on February 4, 2016 (the "Termination Date"), as a form of retaliation under the pretext of "unsatisfactory work performance" after having discussed her concerns about possible race discrimination with the agency's HR department.

9.  Furthermore, it will be shown that retaliation towards the Plaintiff began within weeks of "exercising her right to participate in a protected activity" to the agency's HR department. There were many email and verbal communications to the agency's HR office in care of its representative Mrs. Stith, about not wanting to be retaliated against for exercising her rights. After such communication to HR, the Plaintiff was emailed information on retaliation which detailed the state's policy on discrimination and

3

retaliation from Mrs. Stith. With that communication from HR, she felt confident at the time that there would be no adverse action taken against her, but she was mistaken.

10. She quickly realized that more work assignments were given to her. Work that originally had been performed and produced by the vendors DST hired and the Plaintiff would oversee. Also, added pressure was put on her to perform the duties of the vacant CO position, along with her own duties as the marketing officer. Even though the Plaintiff was told that the agency will make attempts to fill the vacancy, DST's Retirement Systems hired a Content & Communication Manager Marni Schribman ("Mrs. Schribman"), in April of 2015.

11. It was the Plaintiff 's understanding that the Content & Communication Manager was hired to manage the small communication team of the Retirement Systems, including the Plaintiff from the SRP team which would then make Mrs. Buonfiglio, a second line manager to the Plaintiff . For clarity, the names and duties of the SRP team members are as follows:

- The Plaintiff , Marketing Officer (African American)
- Communication Officer, VACANT until August 2015. Filled by Catherine Jarboe (Caucasian)
- Mya Moseley, Compliance Officer (Caucasian)
- Reika Krishnan, Project Manager (Indian)
- Mary Laurie CeCe, SRP Attorney (Caucasian)
- Mary Buonfiglio, SRP Deputy Director (Caucasian)
- Lisa Page, Administrative Assistant (Caucasian)
- Steve Toole, Director of the Retirement Systems (Caucasian)

4

12. Although Mrs. Schribman, was slated to be the Plaintiff's Manager on paper, she still answered directly to Mrs. Buonfiglio, although Miss Schribman actively managed the retirement plans section communication team members. Below is a list of those team members:

Steven Mann (Caucasian)

Michelle McDonald – (African American)

Margaret Christina Frazier (Caucasian)

13. After Miss Schribman became acclimated into her position, the Plaintiff confided in her about the problems she was having with Mrs. Buonfiglio and Miss Schribman told her she would meet with Mrs. Buonfiglio to discuss her concerns. In sharing her concerns with Miss Schribman, the Plaintiff reasonably believed that her concerns would be addressed and the working conditions would change. The Plaintiff could not foresee what chain of events would take place after Miss Schribman met with Mrs. Buonfiglio. After meeting with Mrs. Buonfiglio, Miss Schribman began to act differently towards the Plaintiff . Miss Schribman would stop exchanging pleasantries with the Plaintiff , she would listen in on phone calls that the Plaintiff was having with vendors and report any and everything back to Mrs. Buonfiglio, when previously, she complimented her on the vast amount of work the Plaintiff had accomplished. Miss Schribman mentioned to the Plaintiff that she has never managed a team before getting this particular positon and wanted to make Mr. Steve Toole ("Mr. Toole" or "Director", respectively), the Director of the Retirement Systems happy. Both Mrs. Buonfiglio and Miss Schribman answered to Mr. Toole, so upon information and belief, it is the Plaintiff position that after Mrs.

5

Schribman spoke with Mrs. Buonfiglio, it would be in her best interest to play along with how Mrs. Buonfiglio was treating the Plaintiff.

14. From July 2015 through December 2016, Plaintiff engaged in protected activity, by filing an EEOC Complaint.

15. After that time, the Defendant and its agents unfairly targeted Plaintiff for termination.

16. During the last several months of her employment with DST, and following the multiple grievances to HR about Mrs. Buonfiglio and the unfair treatment she was receiving, she was given numerous duplicitous warnings from the department. One of which defamed her character and outright accused her of falsifying a state job application. The warning notice informed her that it was brought to the agency's attention that she lied on the job application for the marketing officer about her educational accomplishments. None of which was the truth. The Plaintiff attempted to clear her name by offering to bring in her two college degrees, one from the community college of Baltimore, in which she graduated from, and the other from the four year university in which she graduated, but was told by the HR representative, Kristin Bierline ("Ms. Bierline"), that it would be of no use because they hired a third party to research my education and the results came back that I did not graduate from the community college listed on my application, as that was the only college questioned.

17. Additional warnings from DST to the Plaintiff consisted of other farcical performance issues to include costing the agency money for a missed deadline on a newsletter printing. For clarity on the newsletter, the Plaintiff's only role was to put the document into the agency's document tracking system, SharePoint, for legal signoff. The Plaintiff did not write the newsletter, nor did she fail to inform the attorney -Mary Laurie Cece

6

("Mrs. CeCe"), or the CO –Cathy Jarboe ("Ms. about its deadline to be approved, but was the sole person written up for the failure of not having it approved by the print deadline. Why was the Plaintiff singled out and was the only person being written up by her second line supervisor Mrs. Buonfiglio for the incident. When the Plaintiff questioned Mrs. Buonfiglio as to the reason she was being written up for this, she was told by Mrs. Buonfiglio that it was her fault that the newsletter did not get printed on time, and as a senior level employee, the Plaintiff should have known better. However, Mrs. Cece was a more senior person of the SRP staff than the Plaintiff, as she has been with the agency longer than the Plaintiff, was very familiar with the agencies practices and certainly was in a better position, than the Plaintiff to make the decision. It is important to note that Ms. CeCe was not reprimanded, nor disciplined.

18. The true reasoning for the write up and warning notice was unreasonable and preposterous, as well as a clear indication that the Plaintiff was targeted and singled out for engaging in a protected activity. The attorney Mrs. Cece was technically more senior than the Plaintiff because she was hired months before the Plaintiff . Also, the Plaintiff made many different efforts to get the newsletter signed off by legal including emailing her, and having her email pinged by the document management system which sends a message that she has an outstanding document waiting for her sign off in the system with an implicit deadline.

19. On January 8, 2016, the Defendant ordered, through The National Student Clearinghouse ("NSC"), a background check on the Plaintiff. On January 26, 2016, the Defendant issued a written disciplinary notice to the Plaintiff, entitled; "This is a written warning for falsifying a job application under N.C.G.S. § 126-30". Specifically, the notice provided

7

that; "IN PREPARATION FOR THE ADMINISTRATIVE HEARING ARISING OUT OF YOUR CLAIMS AGAINST YOUR SUPERVISOR FOR DISCRIMINATION, RETALIATION, AND HARASSMENT THE HUMAN RESOURCES OFFICE AT THE DEPARTMENT OF STATE TREASURER MADE AN EFFORT TO VERIFY CERTAIN INFORMATION ON THE JOB APPLICATION SUBMITTED BY YOU FOR THE POSITION OF MARKETING OFFICER FOR THE SUPPLEMENTAL RETIREMENT PLANS". The notice goes on to state that; "During this research it came to light that the information on the job application in which you state that you received an associate's degree in marketing from the Community College of Baltimore appears to be false". In the notice, the Human Resources Officer, Mrs. Bierline, quotes from N.C.G.S. §126-30, in relevant part that states: b. "**the employing authority within each department, university, board, or commission, shall verify the status of credentials and the accuracy of statements contained in the application for each [n]ew employee within "[9]0 days" from the date of the employees employment**".

20. It is uncontroverted that the Plaintiff employment began more than 90 days prior to receiving this written warning. Mrs. Bierline admitted in her correspondence, that the sole purpose of this "so called investigation", was because, the Plaintiff had filed "claims" against her supervisor. This background check was for an improper purpose, and served no other purpose, but to exasperate the Plaintiff 's emotional distress and retaliate against the Plaintiff for engaging in protected activity, for which she was subsequently terminated. This is a direct example of the retaliation experienced by the Plaintiff at the hand of the Respondent and its employees.

8

21. In is important to note that the Plaintiff does in fact have an **Associate's Degree from the Community College of Baltimore and a Bachelor's Degree (which they did not question) from Notre Dame College**.

22. The Respondent subsequently disciplined the Plaintiff for allegedly providing false information, which is tantamount to an adverse employment action, which lead to her termination. The retaliation, in this instance, is by clear and convincing evidence.

23. Plaintiff incorporates her chart showing the retaliation below:

| DATE | DECISION MAKER | DISCIPLINE | COMMENT |
|------|----------------|------------|---------|
| 06-12-2014 | Hired | NA | New Employee (12 Month Probationary period/could have been let go for any reason). |
| 3-03-2015 | Mary Buonfiglio | None | **Performance Review (Meets Expectations)** |
| 07-21-2015 | Rosita Sabrosso-Rennick | None | **Filed allegation of discrimination.** |
| 09-22-2015 | Mary Buonfiglio | Negative Performance Review | **Placed on Performance Improvement Plan ("PIP")** |
| November 20, 2015 | Mary Buonfiglio | Written Warning. unsatisfactory job performance. (Missing alleged deadlines) | **Warning Placed in File.** |
| December 17, 2015 | Mary Buonfiglio | Allegation that Plaintiff missed a "Major Deadline". | |
| January 8, 2016 | Sam Balohac, HR | NA | **Conducted an application background check.** |
| January 29, 2016 | Kristen Bierline | Written Warning. Falsification of Job Application regarding education. Warning used to terminate the Plaintiff | |
| January 29, 2016 | Mary Buonfiglio | Written Warning regarding unsatisfactory job performance. Warning used to support termination. | |
| February 8, 2016 | Mary Buonfiglio | Pre-Disciplinary Conference. | |
| February 10, 2016 | Steve Toole | The Plaintiff was terminated. | |

24. On February 10, 2016, the Plaintiff was unlawfully terminated.

25. The Defendant's actions were unlawful.

26. Plaintiff engaged in protected activity, thus, the Defendant was prohibited from retaliating against her.

27. Plaintiff has suffered damages.

28. Plaintiff prays for judgment in the amount of $500,000

29. Plaintiff prays that she be reinstated to her position.

30. Plaintiff prays for back pay.

31. Plaintiff prays for front pay.

32. Plaintiff prays that her personnel record be sanitized.

33. Plaintiff prays that the court will prohibit the Defendant from engaging in any future prohibited personnel practices.

34. And any other relief that is within the power of the court to grant.

## CLAIM 2- WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

35. Plaintiff alleges all claims in the proceeding paragraphs.

36. Plaintiff engaged in protected activity, that is reporting discriminatory conduct on behalf of the Defendant and its agents.

37. Defendant had actual and/or constructive knowledge about the protected activity and not only failed to take prompt and adequate remedial action, but instead, participated in the targeting and retaliation of the Plaintiff.

38. The treatment of Plaintiff by the Defendant was perpetuated with malice and reckless disregard of fundamental decency with the intention of causing Plaintiff's termination of her employment with her employer.

10

39. The conduct of Defendants was intentional, willful, and calculated to cause damage to the Plaintiff's lawful employment with her employer. Their conduct was perpetuated with the intentional and improper purpose of causing damage to Plaintiff and was without justifiable cause. Moreover, Plaintiff's termination was contrary to clear mandate of public policy, including, Title VII of the Civil Rights Act of 1964 and Retaliatory Employment Discrimination Act ("REDA") (Chapter 95, Article 21 of the N.C. General Statutes AND the common law and public policy of North Carolina, N.C. Gen. Stat. §143.422.2 preventing discrimination in the work place.

40. As a result of the conduct of Defendant Plaintiff suffered loss of employment, loss of pay, loss of wages, severe emotional trauma including anxiety, depression, financial losses and fringe benefits.

41. As a result of Defendant's conduct and actions Plaintiff has suffered and will continue to suffer loss of employment, lost wages and other consequential damages and harm to her reputation.

42. Plaintiff has suffered damages.

43. Plaintiff prays for judgment in the amount of $150,000

44. Plaintiff prays that she be reinstated to her position.

45. Plaintiff prays for back pay.

46. Plaintiff prays for front pay.

47. Plaintiff prays that her personnel record be sanitized.

48. Plaintiff prays that the court will prohibit the Defendant from engaging in any future prohibited personnel practices.

49. And any other relief that is within the power of the court to grant.

11

## CLAIM 3 VIOLATION OF DUE PROCESS

50. Plaintiff alleges all claims in the proceeding paragraphs.

51. The North Carolina State Constitution, Article I, Section 1, The equality and rights of persons, states:

    **"We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness".**

52. Defendant has violated Plaintiff's rights under the North Carolina State Constitution, Article I, Section 1, because Plaintiff has been deprived of a liberty interest and privilege in working in an environment free from retaliation based on protected activity as alleged in this Complaint.

53. The North Carolina State Constitution, Article I, Section 19, Law of the land; equal protection of the laws, states:
    **"No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin".**

54. Defendant has violated Plaintiff's rights under the North Carolina State Constitution, Article I, Section 19, because Plaintiff has been deprived of a liberty interest and privilege in working in an environment free from retaliation based on protected activity as alleged in this Complaint.

55. Plaintiff had a property right to continued employment under the various laws and regulations of North Carolina in that she had an expectation of continued employment, or at least, not to be terminated for cause absent timely notice and an opportunity to be heard.

12

56. Plaintiff had a protected liberty interest in her job in that the various laws and regulations of the NC Government provided restrictions or limitations on the NC Government's right to terminate plaintiff's employment.

57. Plaintiff's liberty interest in employment has been violated due to the actions of the Defendant's as described herein and their agents in injuring plaintiff's good name and reputation that has foreclosed plaintiff's ability for other employment opportunities.

58. All actions taken by the Defendant and their agents against the plaintiff were in violation of the NC Constitution and the U.S. Constitution and its amendments, specifically the 5th and 14th Amendment.

59. As a direct, foreseeable, and proximate result of the Defendant's actions in this matter, plaintiff has suffered, and continues to suffer, substantial losses in earnings and other employment benefits, and plaintiff has suffered and continues to suffer pain, discomfort and anxiety, humiliation and emotional distress and will continue to suffer distress in the future in an amount according to proof.

## CLAIM 4 DEFAMATION, LIBEL, SLANDER

60. Plaintiff alleges all claims in the proceeding paragraphs.

61. Plaintiff graduated with honors with her Associates and Bachelor's Degree in Marketing.

62. Plaintiff has traveled with American Novelist, essayist, playwright, poet and social critic James Baldwin.

63. Plaintiff's career is highlighted with accomplishments in Marketing.

64. The Defendant made false allegations that the Plaintiff falsified the fact that she had an Associate's degree, despite clear and convincing evidence to the contrary.

13

65. The Defendant's published the same in the Plaintiff's personnel file, which is a public record.

66. The Defendant represented the falsehood to damage the Plaintiff's integrity and reputation, in their attempt to humiliate and retaliate against the Plaintiff for engaging in protected activity.

67. The statements published about the Plaintiff were false, malicious and defamatory, imputing to Plaintiff a lack of skill and integrity, a lack of business judgment, dishonesty, collusion and conspiracy to submit false information on an application.

68. Among other things the statements published by the defendant about the Plaintiff:

    a) **Impugned plaintiff's ability and fitness to serve the people of the community in a positon of trust;**
    b) **Charged plaintiff with dishonest conduct;**
    c) **Charged plaintiff with fraudulent and unethical practices;**

69. Defendant's made the statements knowing they were false or with diligence would have known they were false.

70. Defendant's statements injured plaintiff's reputation for honesty, integrity, and ability in the performance of her duties as a public official. Such statements subjected plaintiff to embarrassment and humiliation.

71. Defendant's false, libelous and defamatory actions have caused plaintiff to suffer great mental anguish, pain, and humiliation, for which plaintiff is entitled to recover damages against defendant.

72. All actions taken by the Defendant's were done with malicious intent to defame the plaintiff.

73. As a further, direct, proximate, and foreseeable result of Defendant's conduct, plaintiff has suffered shame, despair, humiliation, embarrassment, depression, and emotional

14

distress resulting in damages in an amount in excess of $10,000, the precise amount of which will be proven at the time of trial. These damages include lost wages, salary, benefits, and certain other incidental and consequential damages and losses.

Respectfully Submitted,

**ROSITA SABROSSO-RENNICK**
3802 Delverne Road
Baltimore, Maryland 21218
443-240-3260
rositarennick@yahoo.com
Plaintiff

**JURY TRIAL**
I AM REQUESTING A JURY TRIAL ON MY COMPLAINT.

Rosita Sabrosso-Rennick

15