IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-cv-114-BO

| | | |
|---|---|---|
| ROSITA SABROSSO-RENNICK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF LAW |
| v. | ) | IN SUPPORT OF |
| | ) | MOTION TO DISMISS |
| NORTH CAROLINA | ) | AMENDED COMPLAINT |
| STATE TREASURER, | ) | (Fed. R. Civ. P. 12(b)(6)) |
| | ) | |
| Defendant. | ) | |

NOW COMES the Defendant, the North Carolina Department of State Treasurer (hereinafter "DST" or "Defendant"), by and through the undersigned counsel, and hereby provides the Court with this memorandum of law in support of Defendant's motion to dismiss the Plaintiff's amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

STATEMENT OF THE CASE

Plaintiff initiated this action by filing an application to proceed *in forma pauperis* on 2 March 2017, along with an attached complaint and proposed summons. (DE 1, 1-1, 1-3). The application was granted by order of 23 March 2017 and the summons and complaint were filed 24 March 2017. (DE 4, 5, 6)

On 22 May 2017, Defendant received via regular U.S. Mail Plaintiff's "Request for an Order of Default." (DE 10) On 24 May 2017, Defendant filed its motion to dismiss. (DE 12) Subsequently, on 30 June 2017, Plaintiff filed

1

her response to the motion to dismiss and moved to amend her complaint. (DE 18)

On 12 October 2017, the Court entered its order denying Defendant's motion to dismiss and granting Plaintiff's motion to amend her complaint. (DE 20)

On 1 March 2018, Defendant was served by the U.S. Marshal with a summons and the amended complaint, along with the Court's orders. (DE 25) Defendant's motion to dismiss is therefore timely filed on 22 March 2018.

## STATEMENT OF FACTS[1]

Plaintiff's amended complaint sets out four claims: (1) "Retaliation in Violation of Title Seven"; (2) "Wrongful Termination in Violation of Public Policy"; 3) "Violation of Due Process"; and 4) "Defamation, Libel, Slander". (DE 21) She alleges that on 2 December 2016, she received a right to sue letter from the EEOC. (DE 21, ¶2) Plaintiff generally alleges that she was hired by DST in June 2014, and from July 2015 until her eventual termination on February 10, 2016, she was subjected to a series of disciplinary actions, based on her poor work performance. Plaintiff contends that these actions were in retaliation for having complained to "HR" that her supervisor had spoken to

---

[1] While Defendant has assumed Plaintiff's allegations are true as required for purposes of this motion, Defendant reserves the right to contest them at the appropriate time if the case proceeds.

2

her in what she perceived to be a condescending manner, based upon her race. (DE 21, pp 1-10)

## DISMISSAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" – a standard that requires more than facts "that are 'merely consistent with' a defendant's liability." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556, 557). Indeed, the complaint must "permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679. Although all well-pled allegations are presumed to be true and are viewed in the light most favorable to the plaintiff, GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555)). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments," Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000),

3

or "a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555.

## ARGUMENT

I. PLAINTIFF'S STATE LAW CLAIMS ARE BARRED.

With some limited exceptions, the Eleventh Amendment prohibits suits in federal court by private parties against the State of North Carolina, its agencies, and its employees acting in their official capacities. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); Huang v. Bd. of Governors, 902 F.2d 1134, 1138 (4th Cir. 1990); Hooper v. State, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005). Generally, the State and its officials are subject to suits in federal court only if: (1) the State clearly and unequivocally waives its immunity with respect to the particular kind of claim at issue; or (2) Congress exercises its authority under Section 5 of the Fourteenth Amendment to abrogate the State's immunity. See, e.g., Seminole Tribe v. Florida, 517 U.S. 44, 55-59 (1996); Hooper, 379 F. Supp. 2d at 812. For tort claims, the State has provided only a limited waiver of sovereign immunity by enacting the North Carolina Tort Claims Act ("TCA"). See Davis v. N.C. State Highway Comm'n., 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967). The TCA establishes the North Carolina Industrial Commission as the sole and exclusive forum with jurisdiction to review tort claims against State departments, institutions and agencies. See N.C.G.S. § 143-291(a). As the TCA creates only a limited

4

waiver of the State's sovereign immunity regarding negligence claims, plaintiffs remain barred from pursing intentional torts against the State or its officials by the doctrine of sovereign immunity. See Huang, 902 F.2d at 1138; Hooper, 379 F. Supp. 2d at 812; Dickinson v. Univ. of N.C., 2015 U.S. Dist. LEXIS 31721 (M.D.N.C. 2015).

Here, Plaintiff's claims for 1) wrongful termination in violation of public policy, 2) state constitutional due process violations, and 3) defamation, libel or slander are intentional torts under state law. See, e.g., Hill v. Medford, 158 N.C. App. 618, 625, 582 S.E.2d 325, 329 (Martin, J., dissenting), rev'd for reasons in dissenting opinion, 357 N.C. 650, 588 S.E.2d 467 (2003) (holding that the claim of wrongful termination in violation of public policy is a tort, and not a breach of contract). Plaintiff is therefore barred by the Eleventh Amendment and the doctrine of sovereign immunity from seeking such relief against DST in this Court. These claims should therefore be dismissed.

II. PLAINTIFF'S FEDERAL DUE PROCESS CLAIM IS BARRED.

In her third claim, Plaintiff argues that DST violated her right to due process under the federal and state constitutions. (DE 21, ¶¶ 50-59). The mechanism by which an individual may seek redress for alleged deprivations of federal constitutional rights by a state actor is 42 U.S.C. § 1983. See Wiggins v. 11 Kew Garden Court, 497 Fed. App'x 262, 263 (4th Cir. 2012).

Plaintiff's section 1983 claim against DST is barred, as this Defendant is not a proper party to a section 1983 claim and is entitled to Eleventh Amendment immunity.

First, DST is not a "person" subject to suit under 42 U.S.C. § 1983. No section 1983 action can lie against DST, which, as an agency of the State, is the State. See, e.g., Pharr v. Garibaldi, 252 N.C. 803, 115 S.E.2d 18 (1960) (suit against a State agency is a suit against the State). The State, as a rule, is not a "person" for purposes of section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 92 (1989).

Furthermore, the State, and DST as a state agency, are protected by Eleventh Amendment immunity from liabilities that must be paid from public funds. See Quern v. Jordan, 440 U.S. 332, 342-43 (1979); Will, 491 U.S. at 71. The State of North Carolina has not waived its Eleventh Amendment immunity as to 42 U.S.C. § 1983. Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1139 (4th Cir. 1990); Stewart v. Hunt, 598 F. Supp. 1342, 1350-51 (E.D.N.C. 1984). Accordingly, the Section 1983 or federal due process claim against DST should be dismissed.

III. PLAINTIFF'S RETALIATION CLAIM IS SUBJECT TO DISMISSAL PURSUANT TO RULE 12(b)(6).

Plaintiff maintains that DST dismissed her in retaliation for "having discussed her concerns about possible race discrimination with the agency's

HR department." (DE 21, ¶ 8)  Plaintiff's retaliation claim fails as a matter of law because the amended complaint does not allege facts demonstrating a causal connection between her termination and any alleged discussions with HR regarding racial discrimination.

Title VII protects individuals from retaliation by making it unlawful for an employer to discriminate against an employee for opposing an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  Thus, Plaintiff can demonstrate retaliation under Title VII only if she shows that (1) she engaged in protected activity; (2) she suffered an adverse employment action at the hands of her employer; and (3) there is a causal link between the two events.  See Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001)); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  Plaintiff's complaint is devoid of factual allegations to support element three of the *prima facie* case, causation.  Accordingly, even if all of the amended complaint's facts were true, Plaintiff fails to state a retaliation claim.

Plaintiff may demonstrate that protected activity caused the at-issue adverse action through two evidentiary routes.  First, Plaintiff may attempt to show that the adverse act bears sufficient temporal proximity to the protected activity.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).  Second, Plaintiff may attempt to state a

7

*prima facie* case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation. Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).

In this case, there is no temporal proximity between the adverse action and the protected activity. Plaintiff plainly alleges that her protected activity concerned her discussions with the HR department in July 2015. (DE 21, ¶ 5) Plaintiff's termination occurred 7 months later, on February 10, 2016. (DE 21, ¶¶ 23, 24). The prolonged period between Plaintiff's alleged protected activity and the adverse employment action not only fails to support a viable claim of retaliation, it suggests the opposite conclusion: there was no retaliation. See Pepper v. Precision Valve Corp, 526 F. App'x 335, 337 (4th Cir. 2013) ("The passage of at least four months between the protected activity and these events undermines Plaintiff's argument that her protected activity was the cause of the employer's actions."); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (noting that a causal connection exists only where an employer takes an adverse action against an employee "shortly" after learning of the protected activity); Brockington v. Bethea Baptist Retirement Community, 2007 U.S. Dist. LEXIS 24638, at *18-19 (D.S.C., Mar. 21, 2007) (dismissing plaintiff's retaliation claim, reasoning that no temporal proximity or causal connection

existed where the employer took adverse action five and one-half months after plaintiff engaged in protected activity).

Because a seven-month time period is too long to establish a causal connection between Plaintiff's discussions with HR and Plaintiff's termination for unsatisfactory job performance (and indeed, negates the inference of retaliation), Plaintiff must rely on other evidence within the intervening period to allege a causal connection. See Lettieri, 478 F.3d at 650. In Lettieri, the employer stripped the plaintiff of "significant job responsibilities" beginning the month after the plaintiff engaged in protected activity. Id. at 650-51. This enabled the employer to assert that the plaintiff "was not needed and should be terminated." Id. at 651. Within approximately three months of the protected activity, the employer considered firing the plaintiff. Id. Although the plaintiff was fired "because her position was supposedly redundant, [the plaintiff's supervisor] immediately sought approval to hire a replacement." Id. The Fourth Circuit deemed these intervening events, "which occurred regularly" after the plaintiff's protected activity, sufficient to establish a *prima facie* case of causation. Id.

Here, Plaintiff's allegations simply do not show that the alleged conduct, like the intervening events that established prima facie causation in Lettieri, "occurred regularly." Plaintiff alleges that she received "duplicitous warnings" regarding an alleged falsehood on her job application. (DE 21, ¶ 16) She also

9

alleges that she received a warning regarding missing a deadline for an important project, which cost the agency money. (DE 21, ¶ 17) However, Plaintiff alleges no facts to support her allegations that the reasons for these warnings were either untrue or were prompted by retaliatory animus.

To survive a motion to dismiss, a civil rights plaintiff retains the burden of alleging facts sufficient to state a claim entitling her to relief. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002); Jordan v. Alternative Res. Corp., 458 F.3d 332, 346-47 (4th Cir. 2006). Plaintiff's retaliation allegations summarily assume that her written warnings were based on events that did not occur or were manufactured in order to retaliate against her. Such conclusory allegations are insufficient to defeat a motion to dismiss. See Twombly, 550 U.S. at 555.

IV. PLAINTIFF'S STATE CONSTITUTIONAL LAW CLAIM FAILS AS A MATTER OF LAW.

In her third claim, Plaintiff alleges that the Defendant violated her due process rights under the State Constitution. (DE 21, ¶¶ 51-58) Because Plaintiff has an adequate state remedy via other claims, this claim should be dismissed.

A direct cause of action under the North Carolina Constitution is permitted only in circumstances where there is an "absence of an adequate state remedy." Amward Homes, Inc. v. Town of Cary, 206 N.C. App. 38, 58,

10

698 S.E.2d 404, 419-20 (2010)(internal quote omitted); see also Corum v. University of North Carolina, 330 N.C. 761, 782, 784, 413 S.E.2d 276, 289, 291 (1992). A state remedy is adequate if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for injury alleged in the direct constitutional claim. See Estate of Fennell v. Stephenson, 137 N.C. App. 430, 437, 528 S.E.2d, 911, 915 (2000). That Plaintiff actually succeed and obtain her state remedy is not required. See e.g., Rousselo v. Starling, 128 N.C. App. 439, 447, 495 S.E.2d 725, 731 (1998). As Plaintiff alleges that she has claims for wrongful termination in violation of public policy and defamation, (DE 21 ¶¶ 35-49 and 60-73), she acknowledges that she has an alternative state remedy, and her state constitutional claim must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that Plaintiff's amended complaint be dismissed with prejudice.

Respectfully submitted, this 22nd day of March, 2018.

JOSHUA H. STEIN
Attorney General

/s/ Joseph A. Newsome
Special Deputy Attorney General
N.C. State Bar No. 25434
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Facsimile: (919) 716-6755
Email: jnewsome@ncdoj.gov

CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, and to further certify that the undersigned served the following non-CM/ECF participant by depositing a copy of same with the United States Postal Service, first-class postage prepaid, and addressed as follows::

Rosita Sabrosso-Rennick
3802 Delverne Rd.
Baltimore, MD 21218

This the 22nd day of March, 2018.

/s/ Joseph A. Newsome
Special Deputy Attorney General
