IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-114-BO

ROSITA SABROSSO-RENNICK,  )
    Plaintiff,  )
                                                                     )
    v.  )                ORDER
                                                                     )
NORTH CAROLINA STATE  )
TREASURER,  )
    Defendant.  )

This cause comes before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, proceeding in this matter *pro se*, has responded outside the time provided, and the motion is ripe for ruling. For the reasons that follow, defendant's motion to dismiss is granted in part.

## BACKGROUND

Plaintiff's amended complaint alleges claims for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; wrongful termination in violation of North Carolina public policy; violation of plaintiff's due process rights under the North Carolina Constitution;[1] and defamation, libel, and slander. Plaintiff alleges that she, a forty-nine year old African American female, was employed by defendant as an Information and Communications Specialist (II), with a working title of marketing officer, prior to her unlawful dismissal for allegedly unsatisfactory work performance. Plaintiff was hired in 2014 and alleges that her first protected activity took place in July 2015 when she consulted with defendant's human resources department "immediately following one of many uncomfortable and antagonistic conversations

---

[1] Plaintiff has clarified in her response to the motion to dismiss that she has brought a due process claim only under the North Carolina Constitution.

with [plaintiff's] [m]anager, Mrs. Buonfiglio." Amd. Cmpl. ¶ 5. Plaintiff alleges that she excused herself from the meeting with Buonfiglio after telling Buonfiglio that she was not comfortable with the conversation and felt she was being discriminated against because of her race based on the condescending manner in which she had been spoken to as well as plaintiff's observation that similarly situated counterparts were not treated in the same manner. *Id.* Plaintiff was dismissed from her position as marketing officer on February 10, 2016, allegedly as a form of retaliation after plaintiff had brought her concerns about possible race discrimination to the human resources department. *Id.* ¶ 8. Plaintiff alleges that from July 2015 to December 2016 she engaged in protected activity by filing an EEOC (Equal Employment Opportunity Commission) complaint. *Id.* ¶ 14. Plaintiff alleges that during the last several months of her employment she was given numerous duplicitous warnings from defendant, one of which defamed her character and accused her of falsifying information on her job application. *Id.* ¶ 16.

In support of her due process claim, plaintiff alleges that she had a protected liberty interest in her job which was violated by defendant, and that defendant has through its actions injured plaintiff's good name and reputation and foreclosed plaintiff's ability to secure other employment opportunities. Plaintiff's defamation-based claims arise out of her allegation that defendant made a false allegation that plaintiff had falsified her receipt of an associate's degree on her employment application.

## DISCUSSION

At the outset, the Court grants plaintiff's motion for extension of time to respond to the motion to dismiss and it has considered plaintiff's arguments included in her response.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should

<mark>2</mark>

accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted).

"The Eleventh Amendment bars suit against non-consenting states by private individuals in federal court." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the State itself but also to suits where "one of [the State's] agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Housecalls Home Health Care, Inc. v. U.S. Dep't of Health & Human Servs.*, 515 F. Supp. 2d 616, 625 (M.D.N.C. 2007) (North Carolina Department of State Treasurer considered an arm of the State for Eleventh Amendment purposes). The Eleventh Amendment bars suit in federal court regardless of the nature of the relief that is sought, *Pennhurst*, 465 U.S. at 100, unless one of the limited exceptions such as waiver or abrogation applies. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).

Plaintiff has identified no waiver or abrogation of immunity with respect to her state law claims, and her state law claims against defendant are properly dismissed. *See also Johnson v. North Carolina*, 905 F. Supp. 2d 712, 723 (W.D.N.C. 2012) (dismissing state law employment-

3

related claims against state agency employer); *Dai v. Univ. of N. Carolina, at Chapel Hill*, No. 1:02CV224, 2003 WL 22113444, at *5 (M.D.N.C. Sept. 2, 2003) ("the State is likewise entitled to Eleventh Amendment immunity when common law tort claims, such as wrongful discharge, that seek monetary damages are brought into federal court through pendent jurisdiction."). Moreover, any limited waiver of sovereign immunity by the State of North Carolina with respect to tort claims requires that such claims proceed before the North Carolina Industrial Commission. *See* N.C. Gen. Stat. § 143-291; *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005) (wrongful termination is a tort not a contract claim).

Title VII represents a valid abrogation of the State's Eleventh Amendment immunity, however. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448-49 (1976) (Title VII was "amended to bring the States within its purview"); *Stewart, Jr. v. Virginia Com. Univ.*, 414 F. App'x 555, 556 (4th Cir. 2011). Title VII prohibits discrimination by employers against its employees for opposing any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). In the absence of direct proof of retaliation, a plaintiff must first make a prima facie showing that she engaged in protected activity, that her employer took adverse employment action against her, and that a causal connection exists between the protected activity and the adverse employment action. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). If the plaintiff has established a prima facie case, it may be rebutted by her employer by a showing of legitimate, nondiscriminatory reasons for the adverse employment action. *Id.* The burden then lies with plaintiff to show that her employer's proffered legitimate reasons are merely pretext for discrimination. *Id.*

Defendant does not argue that plaintiff has failed to satisfy the first and second elements of her retaliation claim – that she engaged in protected activated by complaining to human resources and that she suffered an adverse employment action when her employment was

4

terminated. Defendant argues only that plaintiff has failed to sufficiently allege that a causal connection exists between her protected activity and the adverse employment action. Plaintiff has alleged that she engaged in protected activity by complaining to human resources about her manager, Buonfiglio, in July of 2015. As noted above, plaintiff's termination was in February 2016, approximately seven months later. "Where a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very close." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017). Generally, more than a period of days or weeks is not sufficiently proximate to support the presence of causation. *See, e.g., Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013) (less than two months between protected activity and termination sufficient to establish causation).

Plaintiff contends that after she complained to human resources, defendant subjected her to a series of retaliatory events, including a negative performance review and written warnings regarding unsatisfactory job performance, which demonstrate causation. "In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)). This may include evidence of "recurring retaliatory animus" which occurred during the period between the protected activity and the adverse employment action. *Id.*

Although plaintiff's allegations which would support the presence of recurring retaliatory animus are at times conclusory, she has alleged sufficient facts to nudge her claim across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. On March 3, 2015, Buonfiglio found during plaintiff's performance review that plaintiff was meeting expectations. On September 22, 2015, two months after her human resources complaint about Buonfiglio in July 2015, Buonfiglio

gave plaintiff a negative performance review; on November 20, 2015, Buonfiglio issued plaintiff a written warning for unsatisfactory job performance; on December 17, 2015, Buonfiglio alleged that plaintiff missed another deadline; and on January 29, 2016, Buonfiglio again issued plaintiff a written warning regarding unsatisfactory job performance. *See* Amd. Cmpl. at 9. Buonfiglio was allegedly aware of plaintiff's complaint to human resources and plaintiff contends that each subsequent discipline issued by Buonfiglio was baseless. *See Lettieri*, 478 F.3d at 651 (steps taken after protected activity to make it easier to terminate plaintiff's position may demonstrate causation). At the pleading stage, this is sufficient to proceed further. Accordingly, the motion to dismiss is denied as to plaintiff's Title VII retaliation claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for extension of time [DE 29] is GRANTED and defendant's motion to dismiss [DE 26] is GRANTED IN PART and DENIED IN PART. With the exception of plaintiff's Title VII retaliation claim, plaintiff's claims are DISMISSED.

SO ORDERED, this _13_ day of June, 2018.

_/s/ Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE